JACK THORPE and VERA THORPE,
Plaintiffs in Error,

*v.*

STATE OF TENNESSEE.

(*Jackson*, April Term, 1957.)

Opinion filed June 7, 1957.

Rehearing Denied July 29, 1957.

Lucius E. Burch, Jr., George W. Grider, Burch, Porter, Johnson & Brown, Memphis, for plaintiff.

Thomas E. Fox, Assistant Attorney General, for the State.

Mr. Justice Swepston delivered the opinion of the Court.

Plaintiffs in error were convicted for aiding and abetting, one Elizabeth Ann Laing in prostitution in violation of T.C.A. 39-3501 to 39-3505 inclusive, and the jury fixed the punishment of Jack E. Thorpe at a fine of $250 and 60 days confinement in jail, and that of Vera L. Thorpe at a fine of $250 and 6 months confinement in jail. They have appealed and assigned 17 errors.

We do not find it necessary, however, to discuss all of these assignments. The principal defense, as stated in

the first two assignments and by the statement of defense counsel at the bottom of page 715 of the record and elsewhere, is that these two persons were convicted upon the uncorroborated testimony of accomplices. A large portion of the brief is devoted to the proposition that the prosecuting witness, Mrs. Laing, and all the other witnesses who engaged in sexual intercourse with her are accomplices, and that their testimony is without corroboration.

The case was tried upon that theory and the Trial Court instructed the jury with reference to accomplices and the necessity for corroboration. We do not find it necessary, however, to discuss the question of corroboration because we think that the Court and counsel were under a misapprehension in that regard.

■ Clearly, the offense charged under the above Code sections are misdemeanors because under T.C.A. 39-3505, the penalty provided for is a fine of not less than $50 nor more than $500 or imprisonment in the county jail or workhouse for not less than 60 days nor more than 1 year, or both, in the discretion of the Court. Therefore, under T.C.A. 39-103 these offenses are misdemeanors only.

■ In *Truss v. State,* 81 Tenn. 311, it is held that there are no accomplices in misdemeanor cases; therefore corroboration was unnecessary. That case has never been overruled and we see no reason to do so now.

■ The case as made out by the evidence of the State is as follows: Elizabeth Ann Laing testified that the defendant Jack E. Thorpe came to her and made a proposition that she come to live with him and his wife, Vera

L. Thorpe, and that they would aid her in the carrying on of the profession of prostitution; that she agreed to the proposition the latter part of April, and about the 1st of May she and her two children by a marriage which had been dissolved by divorce, moved into the home of the Thorpes, and that in order to get the children out of the home she and Mrs. Thorpe went out in the latter's car to a nursing home and she registered the children and that next day Mrs. Thorpe took the children and placed them in the nursing home. From then on until about June 14, Mrs. Thorpe acted as the agent or go-between to bring Mrs. Laing in contact with different men of her acquaintance and that during a period of 6 weeks while she lived in the home she had numerous dates with men brought about with the aid of Mrs. Thorpe, and from them she received fees ranging from $5 to $50 for each act of sexual intercourse and that she divided all of these fees with the defendants. Mrs. Thorpe not only arranged the contacts for her but repeatedly transported Mrs. Laing in Jack Thorpe's pink Lincoln automobile to places of convenient rendezvous.

Witness Charles Russo, a married man, appearing under the compulsion of a subpoena, testified that the first contact he had with Mrs. Laing was when he picked her up in a restaurant and went to a cabin and had sexual intercourse with her for which he paid her $10, the next instance was when he called a certain telephone number and a woman answered the phone and later, since he did not have an automobile but was riding in a truck, Mrs. Thorpe brought Mrs. Laing to a filling station where he was waiting, picked him up and took the two of them to West Memphis, Arkansas, to a motel where the two of

them spent about an hour together and were then picked up by Mrs. Thorpe and returned to Memphis. He testified that he paid Mrs. Thorpe $2 for taking them over there and back and that he paid Mrs. Laing $10.

The witness Saul Pearlman, a married man, testifying under compulsion of subpoena, stated that he first knew Mrs. Thorpe who was then Mrs. Dupree, in April or May 1956, which was the year in which this offense is said to have been committed when she was operating a restaurant called the Dungeon in an alley off Front Street in Memphis; that he was in there two or three times; that sometime after that he could not remember whether it was April or May, he received a telephone call and in response to that call he called another number back; that in both instances it was the voice of a woman on the phone but a different voice on the second call and that he later learned the identity of the second call voice when he met Mrs. Laing, at which time they went across the river to a tourist court where he paid her $50 for her services. He further testified that about the 18th or 19th of June 1956, which was immediately after Mr. and Mrs. Thorpe had been arrested and were out on bond he received a telephone call from a woman who told him to keep his mouth shut; that he reported the matter to the police and that he received another call from the same voice the following day to the same effect.

Witness, H. W. Newman, a married man, testifying under compulsion of subpoena, stated that he went out to the Thorpe residence for the purpose of trying to collect a balance due on a cash register which Mrs. Thorpe had purchased and used before she sold the restaurant, and at that time she remarked to him that

she had a girl-friend that she would like for him to meet; that as a result of same he took the girl on one of his collection trips through Eastern Arkansas and had sexual intercourse with her at a motel at West Memphis and later picked her up at the Thorpe residence when both Mr. and Mrs. Thorpe were at home and took her to a place in Shelby County where he had sexual intercourse with her, but he paid her no money on either occasion.

Albert J. White, a married man, testifying under compulsion of subpoena, stated that he is a captain in the Memphis Fire Department and has been with the Department 26½ years and is now 58 years old; he has known Mrs. Thorpe or Mrs. Dupree 10 or 12 years; that in response to a number left for him at the Fire Station in the early part of May 1956, he called and talked to Mrs. Thorpe who told him that she had a young lady that she wanted him to meet and that he told her to bring the young lady by day after tomorrow; that Mrs. Thorpe brought Mrs. Laing by there and as a result of the meeting Mrs. Thorpe arranged for another meeting between him and Mrs. Laing, and on that occasion Mrs. Thorpe took Mrs. Laing and him to a motel where he and Mrs. Laing engaged in sexual intercourse for which he paid her $5.

The State elected to stand on the case of this last witness, Albert J. White. There was other evidence introduced such as excessive telephone ringing at the Thorpe home after Mrs. Laing came there but we need not go into detail as to that, the reason for which will appear hereinafter.

The defense made by Mr. and Mrs. Thorpe was that Mrs. Laing who was only 18 years old and was working

as a waitress told them that she was pregnant and that as a result of that information the Thorpes told her that if she would agree to come and stay with them and have the baby there and let them adopt the baby, they would see her through and pay all of the expenses of the child's birth, etc.; that Mrs. Laing came there under those conditions and that they did not know that she was a prostitute or engaged in meeting all these various men because she represented to them that she was modeling at a place known as the Variety Club. They said that they were anxious to have a child, that they had kept two children for about 6 years who were later taken away from them by the Juvenile Court for no good reason and that they had obtained another young child from a girl named Rose Ferdinandez who was an unmarried prospective mother and that she lived in their home until the child was born, but that the child died in about six months. They stated that Mrs. Thorpe was unable to bear children herself. They denied all knowledge of any misconduct on the part of Mrs. Laing and stated that when the telephone calls began to be so frequent, Mr. Thorpe became very much annoyed and notified her that she would have to move from his home. Mrs. Thorpe denied everything that was testified to by the above named witnesses with respect to any phase of their testimony that might be incriminating as to her.

Mr. and Mrs. Thorpe obviously made a poor impression on the jury by reason of the fact that it came out in the proof that they had been living together for a year and half holding themselves out as husband and wife when as a matter of fact, they were not lawfully married until the Monday morning after their arrest and release

on bond the night before; they went to Hernando, Mississippi, early next morning and were married at 8:00 o'clock. Their explanation of this fact was incredible and they admitted that during that year and half each one of them made false statements under oath on various documents. Likewise, their explanation was anything but convincing as to how they could live on his salary of $265 a month, "take-home pay," when their expenditures amounted to at least $350 a month and no doubt more, and in addition to the Lincoln automobile they had purchased drapes, wall-to-wall carpeting and a number of appliances of various kinds, yet they were testifying that they were undertaking to pay all the lying-in and delivery expenses of Mrs. Laing for the baby she was supposed to produce. The expert medical testimony was to the effect that Mrs. Laing had not been pregnant at all and had not had a miscarriage.

■ ■ Now some of the other assignments of error may have some merit in them insofar as the sole question of whether or not some phases of the trial were erroneous. In fact we think the Assistant Attorney General was guilty of improper conduct in repeatedly asking questions about collateral matters that did not involve moral turpitude and ordinarily this would in all probability have brought about a reversal of the case on account of its similarity to the situation in *Gray v. State*, 191 Tenn. 526, 235 S.W.2d 20. We have examined this entire record very carefully, however, and we are of the opinion that none of the matters raised in the other assignments, even if erroneous, were prejudicial, and therefore, under the harmless error statute we will not reverse. It seems perfectly clear to us that the guilt of

these defendants is shown beyond any peradventure of a doubt. Otherwise, how under heaven, could you get several married men, some of them with children, to come into Court and testify to conduct on their part that is most likely to strain family relationships and tends to incriminate said witnesses? These defendants were represented by able counsel who offered as good defense as possible under the circumstances. Yet as we view the record there can be no possible reasonable doubt of the guilt of these parties.

We are not unmindful of the fact that Mrs. Laing admitted that she had made false statements under oath on several occasions and that she is a prostitute both *au naturel et a la francaise.*

The jury, however, were the judges of which side of the case was the true one and they were evidently impressed with the most unusual fact that the above-mentioned men had bared their souls and had taken the risk of the possible results to them of telling the truth.

The judgments below are affirmed.